Joel J. Tyler, J.
Isabelle Alberts, as the complainant, and a tenant in premises located in New York County, initiates this criminal proceeding against her landlord, the defendant.
Complainant’s position is that since more than one half of the tenants in her residence building have petitioned defendant, *186 in writing, for a bell buzzer and intercommunication system and defendant has refused to make such installation as allegedly mandated by section 50-a of the Multiple Dwelling Law, the defendant is in violation of section 235 of our Real Property Law.
Defendant moves for a dismissal of the complaint, predicated upon the grounds that, on its face, the complaint does not state a violation of section 235 of the Real Property Law.
Subdivision 3 of section 50-a of the Multiple Dwelling Law provides, as herein relevant, that class A multiple dwellings (here involved) “ shall be equipped with * * * the intercommunication system described in paragraph two of this section, provided that tenants occupying a majority of all apartments within the structure * * * affected * * * request or consent in writing to the installation of such * * * intercommunication system * * * prescribed by the department[1] ’ ’, and such installation shall be commenced and completed within a specified period.[2]
Subdivision 5 of said section 50-a declares it a misdemeanor if the landlord fails to make such installation and maintain the intercom equipment.
It is, however, significant that the tenants, for whose benefit, apparently, said section 50-a exists, are not given the power, on their own initiative, to enforce its provisions. Section 303 of said Multiple Dwelling Law reposes exclusively within the discretion of the New York City Buildings Department the enforcement of said section. (City of New Rochelle v. Beckwith, 268 N. Y. 315, 319; Matter of Goodhart v. City Ct. of City of Yonkers, 190 Misc. 572, affd. 273 App. Div. 858, mot. for lv. to app. den. 273 App. Div. 967; City Bank Farmers Trust Co. v. Short, 203 Misc. 979, 981, affd. 283 App. Div. 779.)
It appears rather foolhardy on the part of the Legislature to establish a significant and valuable right without permitting the persons intended to benefit thereby real authority to secure its enforcement. The effectiveness of the Buildings Department, in our immense city, depends upon the quality of its large personnel, and that quality remains relative from zero to excellent. But yet, individual personnel, either by possible design, whim, reluctance, inefficiency or because too few handle *187 too many applications and forms, can completely thwart the complainant in securing her rights under said section 50-a by failing to enforce this law. The complaining tenant is then relegated to the civil courts, at great expense, to secure redress and compel action by the Buildings Department.
The Legislature may do well to re-examine this matter so as to permit an aggrieved tenant to enforce these rights through a criminal action, in the event the department now charged to do so fails in that obligation within a specified period. What the Legislature creates by statute, they must sometimes recreate.
The complainant, as aforesaid, is somewhat stymied to compel the installation of the intercommunication system under said section 50-a. She thereupon attempts another attack, circuitously, by her claim that defendant has violated section 235 of the Real Property Law in failing to comply with the alleged mandate of said section 50-a.
Said section 235, entitled ‘ ‘ Wilful violation of the terms of a lease ”, provides, insofar as here relevant, as follows: “ Any lessor * * * of any building * * * the lease or rental agreement whereof by its terms, expressed or implied, requires the furnishing of hot or cold water, heat, light, power, elevator service, telephone service or any other service or facility to any occupant of said building, who wilfully or intentionally fails to furnish such water, heat, light, power, elevator service, telephone service or other service or facility at any time when the same are necessary to the proper or customary use of such building, or part thereof * * * is guilty of a violation. ’ ’
Before a tenant can prevail, in urging the application of this statute, he must, at least, demonstrate: (1) the existence of a written lease or rental agreement (People v. Sims, 279 App. Div. 1031; People v. Blindman, 42 Misc 2d 636), and (2) that the landlord has willfully failed to furnish one or more of the specified services (hot or cold water, heat, etc.) or such “ other service or facility * * * necessary to the proper or customary use of such building, or part thereof ”, any or all of which services are required to be furnished by the express or implied terms of such lease.
It would appear that the complainant-tenant here has no written lease with defendant or his predecessor in title, and, accordingly, this factor alone would give her no basis to maintain this proceeding.
But assuming she occupied the premises under a lease with the usual provisions that landlord would provide essential services, and expressly or impliedly providing for the furnish *188 ing and maintenance of an intercommunication system, would the failure to furnish or maintain the same (aside from any civil remedies the tenant may pursue) be a violation of said section 235, in that such system is a “ service or facility * * * necessary to the proper or customary use of such building
We have been told that the term “service or facilities ” would only include items of “ the same general nature” as those expressly enumerated in the statute, and, therefore towels, bed linens and maid service would not be included. (People v. Gottesman, 272 App. Div. 1066.) In People v. Wolinshy (203 N. Y. S. 599) the court declared that awnings are not within the purview of ‘ ‘ service and facility ’ since awnings are not items which “ serves to accomplish the same result and purposes ” as hot or cold water, heat, light, power, etc.— the items enumerated in said section 235, and therefore the failure to provide awnings could not be a basis for criminal (as distinguished from civil) prosecution, even if provided in the lease.
Hot or cold water, heat, light, power, etc. have like significance, in that they are essential to the health and safety of the tenant, whose quiet enjoyment of the premises would be impossible without them. Is an intercommunication system a less vital concomitant to the proper and safe enjoyment of one’s apartment premises in a multiple dwelling, especially in the cities of our State, where the burgeoning cancer of crime has made our citizens veritable hermits in their homes. The crime statistics remain increasingly frightening.[3]
Law is predicated upon living precepts and is expected to alter with the .requirements of accepted and long-lived reality. Section 235 of the Real Property Law was enacted when intercommunication systems were uncommon and probably unnecessary to most apartment dwellers. Reality today militates a re-examination of this statute. We submit that buzzers in apartments, which, when activated, open outside doors leading into apartment buildings, and intercommunication systems, must now be deemed items of “ the same general nature ” (People v. Gottesman, 272 App. Div. 1066, supra) and “ serve[s] to accomplish the same result and purposes ” (People v. Wolinshy, 203 *189 N. Y. S. 599, 600, supra) and are as vitally necessary in such buildings as hot and cold water, heat, light, power, elevator and telephone services. Hopefully, the Legislature will soon specifically add such services to those now specified in said section 235, to remove any doubt of their application, so that if the furnishing and maintenance of such added services are provided in a lease or rental agreement, criminal recourse can be taken by means of section 235 of the Real Property Law, upon the landowner’s failure to furnish or maintain them.
For the aforesaid reasons, the complaint is dismissed, as a matter of law.

. In New York City the “department” is the Buildings Department (Multiple Dwelling Law, § 50-a [subd. 4]; Administrative Code of City of New York, § C26-101.1).

. Provision is also made under that law for the landlord to recover the costs of such installation from the tenants, under terms as may be prescribed by the local emergency housing rent agency.

. For the first six months of 1971 there was an increase in New York City of 30.1% in homicides, over a like period in 1970, with the County of New York (where the premises involved here are located) showing the most homicides of any of the five counties comprising New York City. Such increases in homicides have been experienced also in other large cities. (New York Times, July 9, 1971, p. 1, col. 4.) Further, murders, rapes, robberies and assaults, “ often senseless and casual ” increased 7.5% in June, 1971 over June, 1970. (New York Times, July 26, 1971, p. 1, col. 1.)